Curia, per
Colcock, J.
In determining this question I inustbe governed by the words of our constitution. It willbe observed that all cases of privilege are nowprovided for by some law, and in most of those which have been passed on that subject, both here and in Great Britain, (before the act of Ann,) the word arrest is used; and the construction which has been almost always given to that word, has been, that if the body be not taken, the privilege is not violated. There can be.no doubt but that the framers of Our constitution weré fully apprised of the various opinions on this subject and of all the important cases which had occurred in England, and that after a full knowledge of these circumstances, they passed the clause of the constitution. Now if the framers of our constitution meant no more than that the members should be exempt from arrest, why did they not use that word so common on such occasions. With respect to those who act in a lower sphere of public importance, it is the exemption which is afforded by our acts. I think the convention intended to exempt members from the time' mentioned, from all suits whether by arrest or summons: *154 and although it may appear at the first blush that this prL vilege is too extensive, yet I think that it is supportable both on reasons of policy and justice. And as to the,law' of England on that subject, it is clear from a view of the statute of William III. that a member of parliament cannot be sued while in the discharge of his duty; and whatever may have been the origin of that doctrine, or however extensive it may have been in the early ages of that country, it is now put on the same ground of public policy and justice to the individual. In the case of Bolten and Marten, 1 Dallas 302, Justice Shippen gives an admirable commentary on the law of England, and particularly on the statute of William. He says, “ I think no authority will be wanting to shew what the law was on the subject before the passing of this act. From the whole frame of that statute it appears clearly to havebeen the sense of the legislature, that before that time members of parliament Were privileged from arrest and from being served with any process issuing out of the courts not only during the sitting of parliament, but during the recess within the time of privilege, which was a reasonable-time, eundo et redeundo. The design of the act was not to meddle with the privileges which the members enjoyed during the sitting of parliament, (those seem to have been held sacred,) but it enacts that after the dissolution or prorogation of parliament, or after adjournment of both houses, after the space of fourteen days, any person might commence and prosecute any action against a member of parliament, provided the person of the member be not arrested during the time of privilege. The manner of bringing the action against the member of the house of commons, is directed tobe by summons and distress infinite, to compel a common appearance. But even this was not to be done till after the dissolution, prorogation, and adjournment. \nd he further remarks that this construction, which i<‘ *155 un obvious one, accounts for tbe seeming doubt in Col. Pitt’s case, in Strange, whether he should be discharged on common bail or altogether. It being after the dissolution of parliament, the plaintiff had a right by the act, to sue him, and therefore it seemed at first that he should only be discharged on common bail, but as he had commenced his suit by arresting his person before his time of privilege expired, the judges discharged him entirely-. — ■ It is then clear that the law as stated by the plaintiff’s counsel is incorrect.
It must be obvious that a member may be much harrass-ed by suits, although his body be not arrested. His mind must of course be greatly disturbed and drawn off from his business ; besides it brings upon him a sort of odium which lessons his usefulness. If it be admitted that he may be served with summons while attending on the legislature, it follows as a matter of course, that he may be served with summons eundo et redeundo, and thus he might, by illnatured and malicious creditors, be sued in every district through which he passed, going orreturning, and might be required to attend a court which might be sitting while the legislature was convened, and thus perhaps an undue advantage be taken of him. He might be served with a process within the inferior jurisdiction of a court, in or near its sitting. But at all events he is compelled to attend a court at a distance from his home, at great expense and inconvenience, a hardship which he ought notbe put to in the discharge of apublic duty. And it may be asked in the last place, where is the necessity for it ? Justice is as speedily rendered in one part of the state as another. If the individual had remained at home his creditor would have been bound to follow him. The motion is discharged. The judgment of the court below is affirmed.

Motion refused.